# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CARL DEAN SUTTON,                    )
                                     )
                    Petitioner,      )
                                     )
v.                                   )          Case No. 11-CV-259-GKF-FHM
                                     )
TRACY McCOLLUM, Warden,[1]           )
                                     )
                    Respondent.      )

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1) filed by Petitioner,

a state prisoner appearing pro se. Respondent filed a response (Dkt. # 12) and provided the state

court records necessary for resolution of Petitioner's claims (Dkt. # 13). For the reasons discussed

below, the petition for writ of habeas corpus is denied.

## *BACKGROUND*

On August 27, 2007, Melissa Lord (Lord) and Lakesha Tullis (Tullis) were working at the

Dollar General store near 51st Street and S. Memorial Drive in Tulsa, Oklahoma. At approximately

7:50 p.m., Lord was cleaning at the front of the store and opened the door for a male customer,

wearing a black shirt and jeans. She told him they were closing in ten minutes. Tullis, standing at

the cash register, watched the man as he walked to the back of the store. Just after 8:00 p.m, after

opening the door to allow the last customers to leave, Lord locked the front door, took the till from

---

[1]Petitioner is currently in custody at the Oklahoma State Reformatory, in Granite, Oklahoma. Pursuant to Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts, Tracy McCollum, Warden, is the proper respondent. Therefore, Tracy McCollum, Warden, is hereby substituted as the respondent in this case. The Court Clerk shall be directed to note the substitution on the record.

the cash register, and carried it to the manager's office, located in the rear of the store. Lord testified that she did not remember the man in black shirt and jeans leaving the store.

Tullis made a call on her cell phone and walked to the employees break room at the rear of the store, near the manager's office. When Tullis walked into the break room, a man in a mask, black shirt, jeans, riding glasses, and ball cap was sitting in the corner of the room. He told her to hang up the phone and turn around. Tullis complied and the man tied her wrists behind her back with zip-ties. When Lord unlocked the door to the manager's office, the man pushed both women into the manager's office. Lord and Tullis later identified the man as Petitioner. The women testified that Petitioner had a small, black gun in his hand. He asked for the money in the till and the cash in the safe. Lord complied with Petitioner's request.

After Petitioner stuffed the money into a black bag, he zip-tied Lord's hands behind her back, moved the women back into the break room, tied them together and forced them to lay down on the floor. After the women were on the floor, Petitioner left. A short time later, he returned to the break room, without the mask on his face, and asked how to get out of the store. Lord answered and Petitioner left. Using a phone in her pocket, Lord called 911.

Based on these facts, Petitioner was charged by Amended Felony Information in Tulsa County District Court, Case No. CF-2007-4817, Robbery with a Firearm, After Former Conviction of a Felony (AFCF). (Dkt. # 13-8, O.R. at 30). A jury found Petitioner guilty and recommended a sentence of 25 years imprisonment. (Dkt. # 13-6, Tr. Vol. V at 53, 77). On May 1, 2008, the trial court sentenced Petitioner in accordance with the jury's recommendation. (Dkt. # 13-7, Tr. Sentencing at 5). Attorney Jill Webb represented Petitioner at trial and attorney Shena Burgess represented Petitioner at sentencing.

On January 22, 2009, represented by attorney Stuart W. Southerland, Petitioner perfected an appeal to the Oklahoma Court of Criminal Appeals (OCCA). Petitioner raised two propositions of error, as follows:

> Proposition 1: Appellant's confession was given while he was going through drug withdrawal and was therefore involuntary in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

> Proposition 2: Under the specific facts of this case, Appellant's sentence is excessive and should be modified by this Court.

(Dkt. # 12-1). In a Summary Opinion filed August 12, 2009, in Case No. F-2008-467, the OCCA affirmed Petitioner's Judgment and Sentence. (Dkt. # 12-3).

On August 17, 2010, Petitioner filed an application for post-conviction relief. He raised the following propositions of error, as stated by the district court,

> Proposition 1: Petitioner was deprived of effective assistance of counsel because trial counsel failed to challenge the in-court identification as being unreliable in violation of the 6th Amendment of the United States Constitution.

> Proposition 2: Failure of Appellate counsel to challenge the Detective's testimony is [sic] being untrustworthy concerning whether Petitioner made incriminating statements to him deprived Petitioner of the effective assistance of counsel in violation of the 6th Amendment of the U.S. Constitution.

(Dkt. # 12-4). On September 16, 2010, the trial court denied Petitioner's application for post-conviction relief. See id. Petitioner appealed the denial. (Dkt. # 12-5). On January 27, 2011, in Case No. PC-2010-999, the OCCA affirmed the denial of the application for post-conviction relief. Id.

On April 29, 2011, Petitioner filed his petition for writ of habeas corpus. (Dkt. # 1). In the petition, Petitioner raises six (6) grounds for relief,

> Ground I: My 5th & 14th Amend. rights were violated when confession was given while I was going through drug withdrawal and was therefore involuntary.

| Ground II: | Under the 8th Amend. my sentence is excessive and in violation of the equal protection clause of the 14th Amend. |
|---|---|
| Ground III: | My 5th, 6th, & 14th Amend. rights were violated when counsel failed to challenge in-court identification as being reliable. |
| Ground IV: | My 6th Amend. right was violated when trial counsel was ineffective for failing to move to strike detective's testimony as being untrustworthy concerning whether I made incriminating statements. |
| Ground V: | My 6th & 14th Amend. rights were violated when trial counsel was ineffective in failure to investigate or object to prior convictions. |
| Ground VI: | My 6th & 14th Amend. rights were violated when appellate counsel was ineffective in failure and refusal to raise an ineffective assistance of trial counsel claim. |

(Dkt. # 1). Respondent argues Grounds III, IV, and V are procedurally barred and that an anticipatory procedural bar applies to Petitioner's Eighth Amendment claim in Ground II. (Dkt. # 12). Respondent also argues that, in as much as Petitioner claims his sentence is excessive violates state law, this is a state law matter and not cognizable for habeas review. Finally, Respondent also argues the OCCA's decisions on the claims raised in Grounds I and VI were not contrary to, or an unreasonable application of, federal law. Id.

## ANALYSIS

### A.     Exhaustion/Evidentiary Hearing

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent argues that, with the exception of Petitioner's Eighth Amendment claim in Ground II, Petitioner fairly presented the substance of his claims to the OCCA. (Dkt. # 12). Respondent also states that if Petitioner were to return to the state courts to exhaust this issue, his claim would be procedurally barred. Id. at 11.

4

On direct appeal, in Proposition 2, Petitioner claimed his sentence was excessive under Oklahoma law. (Dkt. # 12-1 at 10-14). He did not challenge his sentence under the Eighth or Fourteenth Amendments and failed to provide the state courts an opportunity to address his federal constitutional claims. See Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994). However, in light of the procedural posture of this case, the Court agrees that it would be futile to require Petitioner to return to state court to exhaust these claims. Although technically unexhausted, there is an absence of available state corrective process, see 28 U.S.C. § 2254(b)(1)(B), and they are not barred by the exhaustion requirement. Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013)).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Here, except for the Eighth Amendment claim, Petitioner fairly presented his claims to the OCCA on direct and in his application for post-conviction relief.

### 1. Voluntariness of confession (Ground I)

In Ground I, Petitioner claims his confession was involuntary because he was going through drug withdrawal while in custody at David L. Moss, the jail facility for Tulsa County. (Dkt. # 1 at 4). Petitioner claims the "detectives interrogated me while I was going through withdrawals from Methadone, Xanax, and Dextroamphetamine." Id. Petitioner argues he "could not of [sic] had sufficient awareness of relevant circumstances and likely consequences of self-incrimination" when

he waived his rights.  Id. at 4-5.  On direct appeal, the OCCA denied Petitioner's claim, finding "the trial court's ruling to admit [Petitioner's] custodial interrogation was supported by competent evidence; therefore, the ruling will not be disturbed."  (Dkt. # 12-3).  The OCCA further stated that "[m]ental deficiencies will not make a confession involuntary unless the deficiency deprives the accused of the capacity to understand the meaning and effect of the waiver."  Id. at 1-2.  The OCCA found that Petitioner "both understood the rights that he was waiving and the consequences of waiving those rights."  Id. at 2.  Respondent argues this decision was "not contrary to or an unreasonable application of Supreme Court precedent."  (Dkt. # 12 at 4).

In Miranda v Arizona, 384 U.S. 436 (1966), the Supreme Court recognized that an individual may voluntarily, knowingly and intelligently waive his Fifth Amendment rights and agree to make a statement to police.  For a confession to be rendered involuntary because of a mental condition, there must be coercive activity by the police.  Colorado v. Connelly, 479 U.S. 157, 165 (1986).  "[A]s interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus."  Id. at 164.  Even so, in the absence of any evidence of police coercion, a petitioner's mental condition "does not alone make his statements to the police involuntary."  Nickel v. Hannigan, 97 F.3d 403, 411 (10th Cir. 1996) (citing Connelly).

To determine whether Petitioner's confession to police was voluntary, the trial court held a Jackson v. Denno[2] hearing.  At the hearing, Tulsa Police Detective Stephen St. Clair testified that, on September 11, 2007, he interviewed Petitioner at David L. Moss Criminal Justice Center, the

---

[2]Jackson v. Denno, 378 U.S. 368, 376 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.").

facility serving as the Tulsa County Jail.  He read Petitioner his <u>Miranda</u> rights from the Tulsa Police

waiver form.  (Dkt. # 13-4, Tr. Hr'g Apr. 14, 2008 at 8).  Petitioner signed the waiver form and

agreed to speak with the detectives.  <u>Id.</u> at 8-9.  St. Clair testified that Petitioner was not threatened

or promised anything if he agreed to talk with detectives.  <u>Id.</u> at 11.  When asked whether Petitioner

indicated that he was in any pain during the interview, St. Clair acknowledged that Petitioner

complained about aches and pains in his back and said "he was hooked on pain pills."  In St. Clair's

opinion, however, Petitioner appeared sober and coherent during the interview.  <u>Id.</u> at 11-12.  St.

Clair also testified that even though Petitioner told him he threw up earlier that day, he was not ill

during the interview and Petitioner did not "indicate his physical problems would hinder his

interview with me."  <u>Id.</u> at 13, 18.

Petitioner testified that, prior to his arrest on September 7, 2007, he was taking methadone

four times a day, Xanax four to five times a day, and dextroamphetamine for "A.D.D."  <u>Id.</u> at 20-21.

Petitioner testified that he had a prescription for all three medications, but the medical staff at the

jail had not prescribed any of these medications and gave him an antibiotic and ibuprofen.  <u>Id.</u> at 21-

22.  Petitioner also testified that, during his interview on September 11, 2007, he had "[a]ches and

pains throughout my body, nausea, headaches, dizziness, [and] I wasn't thinking clearly."  <u>Id.</u> at 23.

In addition, he said he "just wasn't quite aware of everything that was going on."  <u>Id.</u>  Petitioner

admitted he remembered signing the waiver of rights form, understood the rights he was waiving,

and understood the consequences of waiving those rights.  <u>Id.</u> at 23-24.  However, Petitioner stated

that he believed St. Clair "took advantage of my mental and physical health, the whole situation that

I was in."  <u>Id.</u> at 24.  At the conclusion of the hearing, the trial court stated, "[Petitioner] said he was

experiencing dizziness, headaches, pain throughout his body and had been vomiting during the

night, but he also said he understood his rights, he signed the waiver and he understood the consequences." Id. at 25. The trial court denied Petitioner's Motion to Suppress. Id. The OCCA determined this ruling should not be disturbed. (Dkt. # 12-3 at 1).

After reviewing the record before the Court, Petitioner fails to show the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(b). Petitioner admitted he understood his rights, understood he was waiving those rights, and understood the consequences of waiving those rights at the time he signed the waiver form. Petitioner fails to show if or how the police used force, threats, or promises in exchange for his statement. Petitioner's belief that the detectives "took advantage" of his situation is insufficient to show the police used coercion to elicit a confession. Petitioner fails to show he is entitled to habeas relief on Ground I. 28 U.S.C. § 2254(d).

### 2.    Excessive sentence (Ground II)

In Ground II, Petitioner claims his sentence is excessive and violates the Eighth Amendment of the United States Constitution and the equal protection clause of the Fourteenth Amendment. (Dkt. # 1 at 6). Petitioner claims the sentence is harsh in light of the facts of his case and "is disproportionate to the sentences generally given for this type of crime." Id. In support of his claim of a disproportionate sentence, Petitioner argues that because he was convicted of an "85%" crime, his 25-year sentence "is the functional equivalent to a 57 year sentence when averaging the actual amount of time that I will have to serve. And when comparing 85% to 1/3 of time to serve for parole, the sentence is close to a 64 year sentence." Id. Respondent argues this claim is unexhausted and subject to an anticipatory procedural bar. (Dkt. # 12 at 11). The Court agrees with

Respondent. Petitioner's Eighth and Fourteenth Amendment claims are subject to an anticipatory procedural bar and are addressed in Part C, below.

On direct appeal, Petitioner argued his sentence was excessive under Oklahoma law. (Dkt. # 12-1 at 10). Appellate counsel argued that the OCCA "must examine both the harshness of the punishment *and* the nature of the offense in order to conclude whether its collective conscience has been shocked." Id. at 12. Counsel stated that Petitioner "used a BB gun to commit the robbery alleged in this case," did "little to indicate any real intent to harm the victims of the robbery," and Petitioner's drug addiction was never considered as mitigation. Id. at 13. Counsel requested Petitioner's sentence be modified to the minimum term of twenty years in prison. Id. at 13-14. The OCCA denied relief, finding the sentence to be within the range set by the legislature and that it did not shock the conscience of the court. (Dkt. # 12-3 at 2).

To the extent Petitioner claims his sentence violates Oklahoma law, his claim is not cognizable for federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Sentencing is a matter of state law and a federal habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000). Habeas corpus review generally ends "once we determine the sentence is within the limitation set by statute." Id.

The second page of the Amended Information listed five prior convictions. (Dkt. # 13-8, O.R. at 32). The jury was instructed that if the State proved beyond a reasonable doubt that

Petitioner was the same person previously convicted of two or more prior felonies, "[t]he punishment for ROBBERY WITH A FIREARM after 2 or more previous convictions is imprisonment in the State penitentiary for a term of not less than 20 years up to a life sentence and a fine of up to $10,000." Id. at 92; see also OKLA. STAT. tit. 21, §§ 51.1, 801. Petitioner's twenty-five year sentence is within the range of punishment allowed under Oklahoma law. Therefore, Petitioner is not entitled habeas corpus relief on the state law claim raised in Ground II.

### 3. Ineffective assistance of appellate counsel (Ground VI)

In Ground VI, Petitioner claims his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on direct appeal. (Dkt. # 1 at 12). Petitioner raised this claim in his application for post-conviction relief, alleging "he was denied effective assistance of counsel during all stages of trial and on direct appeal." (Dkt. # 12-4 at 4). In light of Petitioner's pro se status, the Court construes his habeas petition broadly. Haines v. Kerner, 404 U.S. 519, 520 (1972). In Ground VI, Petitioner alleges only that appellate counsel was ineffective in failing to raise "trial counsel's failure to object to prior convictions that 'on their face' revealed to be part of a continuous transaction." (Dkt. # 1 at 12).[3] Yet, as part of the ineffective assistance of trial counsel claims raised in Grounds III, IV, and V, Petitioner also alleges appellate counsel was ineffective for failing to raise the claims on direct appeal. Id. at 7-11. The Court will analyze Petitioner's Ground VI claim of

---

[3]It is unclear whether Petitioner raised this specific issue in his application for post-conviction relief. If Petitioner failed to raise this specific claim, it is unexhausted, but subject to an anticipatory procedural bar. Infra n.7. However, the Court finds that disposal of Petitioner's claim on the merits is the easier course. See 28 U .S.C. § 2254(b)(2); Snow v. Sirmons, 474 F.3d 693, 717 (10th Cir. 2007) ("We can avoid deciding procedural bar questions where claims can readily be dismissed on the merits.").

ineffective assistance of appellate counsel to include failure to raise the claims of ineffective assistance of trial counsel stated in Grounds III, IV, and V.

The OCCA denied relief on Petitioner's application for post-conviction relief, finding that Petitioner did "not establish[] that any of his propositions of error would have or should have changed the outcome of his appeal. Therefore, he has not established that his appellate counsel was ineffective." (Dkt. # 12-5 at 2).[4] Respondent argues the OCCA's decision is not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. (Dkt. # 12 at 26).

In this habeas action, Petitioner is not entitled to relief on his claim of ineffective assistance of appellate counsel unless he demonstrates that the OCCA unreasonably applied Strickland v. Washington, 466 U.S. 668 (1984). Under the familiar constitutional standard set forth in Strickland, Petitioner must demonstrate that his counsel's performance was deficient and that the deficient performance was prejudicial. Id. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). Petitioner must establish the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88.

---

[4]In the Order Affirming the Denial of Application for Post-Conviction Relief, the OCCA cited Strickland v. Washington, 466 U.S. 668, 687 (1984), and stated "Petitioner must show that counsel's performance was deficient under prevailing professional norms and that but for the deficient performance the outcome of his appeal would have been different, or he must establish factual innocence. Petitioner has not established factual innocence." (Dkt. # 12-5 at 2).
   The two-part test set forth by the Supreme Court in Strickland requires a petitioner to show only that his "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 669. The test for ineffective assistance of counsel does not include an alternative showing of factual innocence. Nevertheless, in this case, the Court will afford deference under 28 U.S.C. § 2254(d) because the OCCA concluded Petitioner failed to establish the second-prong of Strickland, stating Petitioner failed to "establish[] that any of his propositions of error would have or should have changed the outcome of his appeal." (Dkt. # 12-5 at 2).

There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Therefore, "[r]epresentation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." Harrington v. Richter, 131 S. Ct. 770, 791 (2011) (quoting Strickland, 466 U.S. at 686).

To establish the second prong, a petitioner must show that this deficient performance prejudiced the defense to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Houchin v. Zavaras, 107 F.3d 1465, 1472 (10th Cir. 1997) (quoting Strickland, 466 U.S. at 694). Failure to establish either prong of the Strickland standard will result in denial of relief. When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). The Tenth Circuit has explained that,

> [i]f the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (footnote omitted) (citation omitted); see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998).

After a review of the record and the underlying merits of the ineffective assistance of appellate counsel claim, the Court finds that Petitioner has failed to demonstrate that any "omitted issue [was] so plainly meritorious that it would have been unreasonable to winnow it out ." Cargle, 317 F.3d at 1202. The Court will discuss each claim below.

### a.        Failure to challenge witness in-court identifications

Petitioner claims appellate counsel should have raised a claim that trial counsel was ineffective for failing to challenge the eye witnesses identification of Petitioner as the man who committed the robbery. (Dkt. # 1 at 7). The two eye witnesses were Lord and Tullis. Petitioner argues trial counsel should have investigated the their police statements because "[t]he statements and information describing the robber did not describe [Petitioner] at all. To the contrary, the description[s] given by [the] witnesses varied considerably from report to report and were totally inconsistent with [Petitioner's] actual description." Id. Petitioner argues that counsel's failure to subject the "[p]rosecution[']s identification process to the proper adversarial testing was negligent performance that prejudiced me." Id. at 7-8.

The record wholly refutes Petitioner's claims and shows that Petitioner's counsel challenged the reliability of the witnesses' identification. See Neil v. Biggers, 409 U.S. 188, 196 (1972); Manson v. Brathwaite, 432 U.S. 98, 114 (1977) ("The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation."). During the

cross-examination of Lord, Petitioner's trial counsel introduced Lord's police statement into evidence. (Dkt. # 13-5, Tr. Vol. IV at 44). Trial counsel asked Lord if her police statement indicated the height or race of the robber. Id. at 47-48. Lord responded that it did not. Counsel asked, "isn't the only indication, the only description that you give is that it's a man?" Id. at 48. Lord responded, "[y]es." Next, Petitioner's trial counsel asked Lord what direction she was facing when the robber placed her and Tullis in the break room. Counsel asked, "when someone came in and said, [h]ow do I get out of here, was your head towards that person?" Id. Lord responded, "I could see the person." Id. at 49. The trial court intervened and told the witness that was not the question asked. After an exchange between the court, the witness, and Petitioner's trial counsel, counsel asked, "[w]ere you facing the door or away from the door?" Id. at 50. Lord responded, "I was facing the wall." Id.

During the cross-examination of Tullis, Petitioner's trial counsel also inquired about Tullis' statement to police. Counsel asked whether her description of the robber included height, weight, scars, tattoos, eye color, or weight. Id. at 72, 76. Tullis replied, "[n]o." Counsel asked, "[i]n fact, the description only included clothing; correct?" Id. at 72. Tullis replied, "[y]es, ma'am." Id. Tullis admitted that all she saw was the man's clothing. Id. at 73. Trial counsel next asked how Tullis was positioned in the break room. Tullis stated she was lying on her stomach facing the break room wall. Id. Counsel asked, "if I understand your testimony correctly, you're saying that during the entire robbery, you never saw the person's face who robbed the store?" Id. at 75. Tullis responded, "[y]es, I just saw a little bit of his face . . . [t]hrough the mask and just a couple of

seconds when he walked in the door." Id.[5]  Counsel also asked Tullis what direction Lord was

facing in the break room and Tullis responded that Lord was also facing the wall of the break room.

Id. at 74-75.

The record clearly shows that Petitioner's trial counsel reviewed the police statements of the

two eye witnesses and subjected both witnesses to a thorough cross-examination challenging their

ability to identify Petitioner as the robber.  Counsel addressed the lack of detail in the physical

descriptions given to police, the manner in which they observed the facial characteristics of the

robber, and how they came to identify Petitioner in a photographic lineup as the man who robbed

the Dollar General.  Petitioner's trial counsel examined the eye witnesses' police statements and was

prepared to question the credibility of their identifications.  Nothing in the record indicates counsel's

performance was deficient.  Petitioner's claim has no merit.  Appellate counsel cannot be ineffective

for failing to raise a meritless claim.  Habeas relief is not warranted.

### b.  Failure to object to testimony regarding Petitioner's confession

Petitioner claims appellate counsel refused to raise the claim that trial counsel was

ineffective for "failing to move to strike [the] detective's testimony as being untrustworthy

concerning whether [Petitioner] made incriminating statements." (Dkt. # 1 at 9).  Petitioner argues

he "should have been afforded the opportunity and right to show bias or motivation and the right to

object to detectives testimony of whether or not I actually confessed to the crime of armed robbery

as nothing more than hearsay evidence." Id.

---

[5]On direct examination, Lord and Tullis testified that they recognized Petitioner from when
he entered the store just before closing.  (Dkt. # 13-5, Tr. Vol. IV at 28-29; 59-60).

Petitioner's claim is refuted by the record. First, Petitioner's trial counsel attacked the credibility of the detectives and their statements regarding Petitioner's confession. During the cross-examination of Detective St. Clair, Petitioner's trial counsel repeatedly asked why St. Clair failed to record the interview with Petitioner. (Dkt. # 13-5, Tr. Vol. IV at 107-09). Counsel criticized St. Clair's decision to not bring Petitioner to Tulsa Police Detective Division where the interview rooms are equipped to record audio and video. Id. at 108. Counsel attacked St. Clair's failure to take notes during the interview or obtain a written statement from Petitioner. Id. at 109, 111. Petitioner's trial counsel also raised this matter during the cross-examination of Detective William Parrish. Counsel asked Parrish if he did anything other than listen as St. Clair questioned Petitioner. Id. at 135. Parrish responded, "I usually will write notes to pass the time, basically." Id. Parrish said he gave his notes to St. Clair for the file, but did not know if St. Clair ever looked at his notes when preparing the report. Id. at 136. Parrish's notes are not part of the trial record.

Next, during closing argument, Petitioner's trial counsel addressed the matter of Petitioner's confession and questioned the credibility of St. Clair. Counsel told the jury,

> Now, the very first thing that [St. Clair] said on this stand when he was talking to me absolutely broke his credibility. He said he didn't bring even a tape recorder into the jail to record what happened during that interview solely for the protection of [Petitioner] because he doesn't want anybody to think that [Petitioner] would have been an informant.

(Dkt. # 13-6, Tr. Vol. V at 22). Counsel said, "[i]t doesn't make any sense that he wouldn't bring a recording device. They are small, ladies and gentlemen. They fit in your pocket." Id. Counsel then told the jury that St. Clair could have easily brought Petitioner over to Detective Division and recorded the interview. Id. at 23. Counsel also addressed Parrish's testimony and the reliability of Petitioner's confession. Counsel told the jury,

And [Parrish] said something curious when he said, Well, I was there and I took some notes. He said, just to pass the time. Just to pass – just to pass the time. Was he not paying attention? I don't understand. It's absolutely unbelievable to me that not only would they not take some sort of care to memorialize what happened, but also to be so flippant about it to say they were just passing time.

It's not as if they didn't know that this would be used against [Petitioner]. That whatever they said, that's their job, every police officer knows that what they do will be used against whoever the suspect is in court. And they chose not to show you. Where they could have had certainty, they chose doubt.

Id. at 23-24.

Finally, trial counsel filed a motion for a Jackson v. Denno hearing in an effort to suppress Petitioner's statement to police. (Dkt. # 13-8, O.R. at 51-52). After the hearing, the trial court denied the motion to suppress Petitioner's statement and granted counsel an exception to the ruling. (Dkt. # 13-4, Tr. Hr'g Apr. 14, 2008 at 25). Even if counsel should have objected at trial, given that the trial court denied Petitioner's motion to suppress, Petitioner fails to show that the outcome of his trial would have been different had counsel objected to the detectives' testimony

The record shows that trial counsel aggressively attacked the credibility of the police and the reliability of Petitioner's statement to the police. Counsel filed a motion to suppress Petitioner's statement to police, focused on the reliability of the confession during cross-examination, and, during closing argument, reminded the jury that neither detective memorialized the confession or took any efforts to record the conversation. In light of the record before the court, Petitioner cannot show the outcome of the trial would have been different. Petitioner fails to show that trial counsel was constitutionally ineffective. Therefore, appellate counsel cannot be ineffective for failing to raise this claim on direct appeal. Petitioner is not entitled to habeas relief on this claim.

### c.     Failure to object to prior convictions during second stage

Petitioner also claims that appellate counsel was ineffective for failing to raise a claim that trial counsel was ineffective in her "failure to investigate or object to prior convictions." (Dkt. # 1 at 10). Petitioner argues "that many of my priors were misdemeanors and others were part of a continuous transaction of the same criminal episode occurring on the same day at the same location and at the same time, all charged under one (1) case." Id. Respondent argues that "[n]one of the prior convictions were for a misdemeanor and the Petitioner fails to state which conviction he is referencing as a misdemeanor." (Dkt. # 12 at 25). Respondent further argues that "[a]ny challenge at trial or on appeal would have been unsuccessful [since] Petitioner had five prior convictions and only two prior convictions were required to sustain the sentencing minimum of twenty years imprisonment." Id.

In Oklahoma, sentencing enhancement is governed by OKLA. STAT. tit. 21, § 51.1. Under this statute,

> Every person who, having been twice convicted of felony offenses, commits a subsequent felony offense which is an offense enumerated in Section 571 of Title 57 of the Oklahoma Statutes, within ten (10) years of the date following the completion of the execution of the sentence, and against whom the District Attorney seeks to enhance punishment pursuant to this section of law, is punishable by imprisonment in the State Penitentiary for a term in the range of twenty (20) years to life imprisonment. Felony offenses relied upon shall not have arisen out of the same transaction or occurrence or series of events closely related in time and location.

Id. § 51.1(B). Robbery and armed robbery are listed in OKLA. STAT. tit. 57, § 571. Petitioner was charged with Robbery with a Firearm and the State alleged five prior felony convictions. Therefore Petitioner was eligible for the sentence enhancement and a minimum sentence of twenty years incarceration.

The Tenth Circuit has held "that a trial attorney's failure to object to the use of a 'facially insufficient' prior conviction for purposes of classifying a defendant as a career offender constitutes deficient representation." Hampton v. Scott, 185 F.3d 874 (10th Cir. 1999) (unpublished)[6] (citations omitted). After reviewing the record, Petitioner's claim fails. The five prior convictions listed on the second page of the Amended Information have different case numbers and only two of the five felonies listed occurred on the same day – August 23, 1989. (Dkt. # 13-8, O.R. at 32). However, the Court need not determine whether trial counsel's performance was deficient for failing to object or investigate the transactional nature of the two felonies on August 23, 1989, because there are three remaining prior felonies that are not "facially insufficient" prior convictions for purposes of the sentence enhancement. Additionally, it is facially clear that at least two of those three are prior felony convictions. Two prior felony convictions are required for enhancement under the Oklahoma statute. Thus, even if appellate counsel should have raised the claim of ineffective trial counsel on direct appeal, Petitioner fails to show the outcome of his appeal would have been different. Habeas relief is denied.

To summarize, in Ground VI, Petitioner claims appellate counsel was ineffective for failing to raise claims of ineffective assistance of trial counsel. The OCCA denied relief, finding that Petitioner could not show how he was prejudiced by appellate counsel's alleged deficient performance. For the reasons discussed above, Petitioner fails to show that appellate counsel was deficient or, had appellate counsel raised the claim on direct appeal, the outcome of that appeal would have been different. Therefore, Petitioner fails to show that the OCCA's decision was

_____

[6]This and other unpublished court decisions are cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas relief is denied on Petitioner's claims of ineffective assistance of appellate counsel.

## C.      Procedural Bar (Grounds II, III, IV, and V)

In Ground II, Petitioner claims his sentence is excessive under the Eighth Amendment and his sentence violates equal protection under the Fourteenth Amendment. (Dkt. # 1 at 6). In Grounds III, IV, and V, Petitioner claims he was denied effective assistance of trial counsel. Id. at 7-11. Petitioner raised the claim that his sentence was excessive on direct appeal, but argued it was excessive under Oklahoma law. (Dkt. # 12-1 at 10). Petitioner failed to present his federal constitutional claims to the state courts. Petitioner raised the claims of ineffective trial counsel in his application for post-conviction relief.[7] On appeal from the denial of post-conviction relief, the OCCA stated that "[w]ith the exception of a claim of ineffective appellate counsel, Petitioner has not raised any issue that either was not or could not have been asserted during his trial or in his direct appeal" and considered such issues waived. (Dkt. # 12-5 (citing OKLA. STAT. tit. 22, § 1086)).

 Respondent argues that Grounds III, IV, and V are procedurally barred and Ground II, though unexhausted, is subject to an anticipatory procedural bar. (Dkt. # 12).

The doctrine of procedural bar prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds, unless a petitioner "demonstrate[s] cause for the default and

---

[7]As previously noted, it is unclear from the record whether Petitioner presented his claim of ineffective trial counsel for failure to investigate or object to prior convictions, as stated in Ground V. If it is unexhausted, then it is subject to an anticipatory procedural bar. An "anticipatory procedural bar" may be applied to deny an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it. Anderson v. Sirmons, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007).

actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'" Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir.1991)).

Applying the principles of procedural default to these facts, the Court finds the OCCA's procedural bar, based on Petitioner's failure to raise his claims on direct appeal, is "independent" because state law provided "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. In addition, the procedural bar imposed on Petitioner's ineffective assistance of trial counsel claims raised in Grounds III, IV, and V is based on state law grounds "adequate" to preclude federal habeas corpus review. When the underlying claim is ineffective assistance of counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns justify an exception to the general rule of procedural default. Brecheen v. Reynolds, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)). The unique concerns are "dictated by the interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)). The Tenth Circuit explicitly narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally in English v. Cody, 146 F.3d 1257 (10th Cir. 1998). In English, the circuit court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

In this case, at trial, Petitioner was represented during by attorney Jill Webb. On appeal, Petitioner was represented by attorney Stuart W. Southerland. For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel on appeal. The second English factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. Id. at 1263-64. Petitioner's defaulted claims are that trial counsel failed to object both to testimony regarding Petitioner's confession and to certain prior convictions on the second page of the Information, and that counsel failed to challenge the eye witnesses' in-court identifications of Petitioner as the robber. Those claims can be resolved upon the trial record alone. As a result, Petitioner has failed to carry his burden of demonstrating that Oklahoma's procedural bar is inadequate and his claims of ineffective assistance of trial counsel raised in Grounds III, IV, and V are procedurally barred.[8] Additionally, Ground II is subject to an anticipatory procedural bar that is independent and adequate to preclude federal habeas corpus review.

This Court may not consider Petitioner's procedurally barred claims unless he is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. The cause standard requires

---

[8]Even if the claims of ineffective assistance of trial counsel were not procedurally barred, the Court would deny the claims on the merits for the reasons set forth in Part B(3), herein.

a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). The "fundamental miscarriage of justice" exception to a procedural bar applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Carrier, 477 U.S. at 495-96; Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); Schlup v. Delo, 513 U.S. 298 (1995). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

Petitioner attributes his failure to raise the claims of ineffective assistance of trial counsel to the ineffectiveness of appellate counsel. (Dkt. # 1 at 8, 9, 11). It is well established that in certain circumstances, appellate counsel's ineffectiveness can constitute cause sufficient to excuse a state prisoner's procedural default. See Carrier, 477 U.S. at 488-89. However, the ineffective assistance of appellate counsel claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. Id. at 489; Edwards v. Carpenter, 529 U.S. 446, 453 (2000). In this case, Petitioner presented his claim of ineffective assistance of appellate counsel in his post-conviction appeal and the OCCA denied the claim on the merits. The Court reviewed the matter in Ground VI, above, and determined that Petitioner failed to show that the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Petitioner fails to show appellate counsel was ineffective or that he was

prejudiced by counsel's alleged deficient performance in failing to raise these three claims of ineffective assistance of trial counsel. Therefore, ineffective appellate counsel cannot serve as cause to overcome the procedural bar.

As to Ground II, Petitioner states that he raised this claim on direct appeal. (Dkt. # 1 at 6). On direct appeal, Petitioner raised the claim that his sentence was excessive under state law. As discussed above, the Eighth and Fourteenth Amendment claims were not fairly presented to the state courts. Petitioner fails to explain why he failed to present his federal constitutional claims in Ground II to the state courts. As a result, Petitioner fails to overcome the anticipatory procedural bar applicable to the constitutional claims raised in Ground II.

Petitioner may also overcome the procedural bar applicable to his defaulted claims under the fundamental miscarriage of justice exception. The fundamental miscarriage of justice exception applies only when a petitioner asserts a claim of actual innocence. Herrera, 506 U.S. at 403-404; Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); see also Schlup, 513 U.S. 298. To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup, 513 U.S. at 316. Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime.... [Or where] it is evident that the law has made a mistake.'" Klein v. Neal, 45 F.3d 1395, 1400 (10th

Cir. 1995) (citation omitted). Petitioner asserts no claim of actual innocence. The fundamental miscarriage of justice exception is inapplicable in this case.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if the merits of his defaulted claims are not considered, the Court concludes that it is procedurally barred from considering the merits of Petitioner's constitutional claims in Grounds II, III, IV, and V. Coleman, 510 U.S. at 724. Habeas corpus relief shall be denied on that basis.

**D.     Certificate of Appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

The Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by

the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). As to the claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the dismissal of the claims on procedural grounds was debatable or incorrect.  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1.  The Court Clerk shall note on the record the substitution of Tracy McCollum, Warden, in place of James Rudek, Warden, as party respondent.

2.  The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3.  A certificate of appealability is **denied**.

4.  A separate judgment shall be entered in this matter.

**DATED** this 19th day of August, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT